**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **DENNIS WILLIAMS, D.P.M.,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **1:07-cv-406- SEB-JMS** |
| | ) | |
| **AMERICAN FAMILY MUTUAL** | ) | |
| **INSURANCE COMPANY,** | ) | |
| **Defendant.** | ) | |

<u>**ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

This matter is before the court for resolution of the Defendant's Motion for Summary Judgment. For the reasons discussed in this entry, the Court finds Defendant's motion to be well taken and shall issue a separate and final judgment in favor of Defendant.

<u>*Factual Background*</u>[1]

---

[1]The Local Rules require that the party responding to a summary judgment motion include a section in its brief "labeled 'Statement of Material Facts in Dispute' which responds to the movant's asserted material facts by identifying the potentially determinative facts and factual disputes which the nonmoving party contends demonstrate that there is a dispute of fact precluding summary judgment." S.D. IND. Local Rule 56.1(b). The Rule is intended to focus the attention of both the parties and the court on which facts are truly being disputed; hence, the Rule's dictate that "the Court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy" if they are not specifically controverted in the opposing party's "Statement of Material Facts in Dispute." It is not uncommon in a lawsuit such as the one before us, where the dispute requires a determination of whether the provisions of an insurance policy apply to a certain set of circumstances, that the parties agree on the underlying factual circumstances. That appears to be the case here, and Plaintiff's failure to include a section in his brief setting forth disputed facts requires the court to accept as true the statement of undisputed facts included in Defendant's brief, so long as those

Plaintiff, Dennis Williams, owned a home located at 3914 Utica Pike in Jeffersonville, Indiana.  Beginning January 25, 2005, he insured the residence through Defendant, American Family Mutual Insurance Company ("American Family"), having purchased a policy which provided coverage for the actual cash value of lost or damaged property as well as replacement value coverage (sometimes referred to as recoupment of depreciation) if the dwelling or property were to be rebuilt or replaced.  The policy provided coverage limits of $298,700.00 for the dwelling and $224,100.00 for personal property located on the premises.   A fire occurred at the home on March 27, 2005, destroying the home and all its contents.

At the time of the fire, there was a mortgage on Plaintiff's home in the amount of $136,800.00 and a federal tax lien in the amount of $491,740.29.  Shortly following the fire, certain lesser amounts were paid by American Family to Williams for living expenses and as an advance on contents coverage.  In June of 2005, American Family received an appraisal report setting the market value of Plaintiff's home at the time of the loss at $201,000.00.  American Family offered to settle the actual cash value of the losses with Plaintiff, but sought to include the IRS/U.S. Treasury as an additional payee on the settlement check to protect the government's recorded lien.  Williams legitimately objected to American Family's attempt to include the government as a payee, pointing out that the insurance contract was between him and the insurance company, with no

facts are supported by appropriate citation to the record.

-2-

additional payees other than the mortgage holder entitled to the benefits of the contract. After American Family determined that the federal tax lien did not necessitate the addition of the government as a payee on William's settlement check, and after it worked out certain other minor discrepancies with regard to amounts payable under the policy, American Family did make good on its obligation to pay the cash value of the dwelling and contents to Williams.  In order for Williams to be entitled to additional payments under the policy to recover the depreciation or "replacement value" of the dwelling and contents, he was required within one year of the loss to replace or repair the home and/or items lost and submit a final repair or replacement bill.

Efforts to resolve the issues relating to the actual cash value payable to Plaintiff under the policy took nearly the entirety of 2005 to complete.  The two largest payments were made on October 9, 2005, @ $167,321.25 for the actual cash value of lost contents, and on December 13, 2005, @ $193,100 towards the actual cash value of the dwelling. During 2005,  Plaintiff also received payments from American Family for "Additional Living Expenses" under the policy and used those funds to lease a house as a temporary residence.  On January 5, 2006, the American Family Claims Representative, Sherry Appelgate, sent Williams a letter summarizing the payments that had been made up to that point and explaining various corrections and deductions which had been or were to be made as well.  The letter also described the amount of coverage still available under

the policy limits which Williams could collect as replacement costs or recovery of depreciation, if he timely replaced or rebuilt the dwelling and its contents.

On January 31, 2006, Williams sent Applegate a letter indicating that he intended to negotiate the purchase of the home were he was temporarily residing.  He indicated the owner was in Florida at the time which might delay the negotiations.  American Family heard nothing more with regard to his attempt to purchase that house.

On February 12, 2006, Williams filed a complaint with the Indiana Department of Insurance registering his displeasure over the fact that the payment of the cash value portion of the insurance benefits had been so unduly delayed.  He complained that, because of the delay in his receiving the actual cash value payments from American Family, he was left with insufficient time within which to satisfy the deadline for claiming additional replacement value coverage.  In his letter to the Department, Williams sought relief from the policy requirement that he replace or rebuild within one year following the loss, since American Family's dilatoriness in making the actual cash value payments under the policy had left him with too little time to take the steps necessary to find and purchase a replacement home and additional contents.

When notified of the complaint, American Family promptly responded to the Indiana Insurance Department on March 8, 2006, setting forth the various payments it had made over the course of the nine month period following the fire at the Williams home,

and referencing the additional time required to clear up the tax lien issues.  American Family defended its investigation and claim processing, describing it as  as timely under the circumstances and pointing out that Mr. Williams still had time to provide receipts for replacement of personal property for up to approximately $45,000.  American Family also noted that Williams had recently contacted American Family to say that he intended to replace the destroyed dwelling by purchasing a replacement home at a price of $329,000.00.  It indicated that if a purchase agreement for that amount were signed prior to March 27, 2006 and a copy provided to American Family, Williams would receive  the remainder of the policy limits, to wit, $97,700.00 in replacement costs (sometimes referred to as "recoupment of depreciation").  Apparently, this response from American Family satisfied the Department of Insurance as no other communications with regard to the complaint have been referenced by the parties to this litigation.

It was a telephone call from Williams to Sherry Applegate that had prompted the reference in American Family's letter to the Indiana Insurance Department to the fact that a replacement purchase by Williams was imminent.  Williams had  telephoned American Family's claims representative, Sherry Applegate, on March 7, 2006, to inform her that he had reached an agreement to purchase property in downtown Jeffersonville for the amount of $329,000.00 and was in the process of having the purchase contract prepared. Shortly before the March 27, 2006, replacement deadline, Williams also submitted to American Family an envelope containing receipts for personal property he claimed to

have replaced.  Those receipts were promptly returned to Williams by American Family with a letter explaining that Williams must resubmit the receipts in a manner which correlated each expense to a particular item on the home contents list he had earlier submitted to American Family.  Williams apparently never complied with this request.

On May 23, 2006, the closing documents relating to the purchase of the property at 215 West Market Street in Jeffersonville were sent to American Family.  The purchase price for the property was $329,000.00, but the named purchaser was not Mr. Williams or his wife.  The listed purchaser of the property was Oracle Prime, LLC, a New Mexico Limited Liability Corporation ("Oracle Prime").  The closing statement reflected a $10,000.00 down payment and a real estate installment contract in the total amount of $169,000.00.  The real estate installment contract was dated March 17, 2006, and was between the prior owner of the property, Mary Jo Frazier,  and Oracle Prime, which listed its principal place of business as 1030 Dodge Lane, Valley Station, Kentucky.

Williams was at the time a member of this limited liability corporation, Oracle Prime, which entity was established in February of 2006, at approximately the same time Williams sent his letter of complaint to the Department of Insurance.  He claims to have directed Oracle Prime to purchase the Market Street property, and represents that he had lived at that location continuously since its purchase.  However, from exhibits submitted in conjunction with the pending motion, it appears that the manager charged with the responsibility for making decisions on behalf of Oracle Prime at the time the property was

purchased was one Richard Williams, not Dennis Williams, who is the Plaintiff in this case.[2]  In the end, sorting out the identities of the management or membership of Oracle Prime is not essential to our decision here.

After being notified of the purchase of the Market Street Property by Oracle Prime, American Family wrote to Williams to inform him that it would not release the remaining policy limits of $97,700.00 for replacement and/or depreciation, because the purchase of the property had not complied with policy requirements in that it was not purchased by the named insured under the policy.  Williams responded to American Family explaining that he had arranged for the purchase of the property by a separate legal entity in order to insulate the ownership of his home from any claims that might arise from his medical practice and that he had no knowledge of the fact that, by replacing the property through a separate legal entity, it would not comply with the terms of the policy.  Plaintiff had at that time and apparently still has no legal title to the property and is not personally liable for the purchase payments being made periodically pursuant to the installment purchase contract.

_The Insurance Contract Provisions Relevant to this Dispute_

---

[2]In the "Undisputed Facts" portion of its brief, American Family cites to the affidavit of attorney Jeffrey Bick as support for many of the factual assertions regarding the make-up of the membership and management of Oracle Prime.  Unfortunately, that affidavit as filed with the court is missing several pages.  However, the closing documents clearly show that the property at issue was purchased by and titled in the name of Oracle Prime, not Plaintiff, and these are undisputed facts that are truly  material to our decision.

This lawsuit was filed by Williams in an effort to recover what he refers to as "the full benefits due" him pursuant to the American Family Indiana Homeowners Policy-Gold Star Special Deluxe Form.  The  insurance policy at issue here identifies Dennis Williams as the named insured and Washington Mutual Bank as the mortgage lienholder on the insured property.   Assignment of the policy is prohibited without American Family's written permission.  The terms "you" and "your" are defined in the policy as the named insured on the policy and any spouse who is a resident of the household.

The definition of  "insured premises," for purposes of coverage for loss of the dwelling and contents is specifically set forth in the policy as follows:

> If you own the one or two family dwelling described in the Declarations, the insured premises means: that dwelling, related private structures and grounds at the location where you reside; ....

The "Loss Payable" clause of the policy states:

> Loss will be adjusted only with the insured named and payable to the insured and the lienholder shown in the Declerations as their respective interests may appear, subject to the terms of the policy.

In pertinent part, the "Loss Payment" clause provides:

> We will adjust all losses with you.  We will pay you unless some other party is named in the policy or is legally entitled to receive payment. ....

American Family's Homeowners Policy also sets forth specific provisions applicable to collecting benefits under its "Replacement Coverage."

If you receive an actual cash value settlement for damaged or stolen property covered by replacement coverage and you have not reached your limit, you may make a further claim under this condition for any additional payment on a replacement cost basis provided:

(1)     you notify us within 180 days after the loss of your decision to repair or replace the damaged or stolen property; and

(2)     repair or replacement is completed within one year of the date of loss.

## *Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp*, 475 U.S. 574, 587 (1986). Summary judgment should be granted only where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only genuine disputes over material facts can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A fact is material if it might impact the outcome of the suit under the governing law. *Id.*

When deciding a motion for summary judgment, the Court relies only on those facts which are undisputed and views additional evidence as well as all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 255; *Conley v. Village of Bedford Park*, 215 F.3d 703, 708 (7th Cir. 2000). Because "summary judgment is not a paper trial, our role in

deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. American Hoenchst Corp*., 24 F.3d 918, 920 (7th Cir. 1994). Our only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.*

<u>*Discussion*</u>

We do not view this as a particularly difficult case or the issues presenting a close call. The facts clearly establish that Williams, as the named insured, did not replace the covered dwelling; Oracle Prime did. On the basis of that straight forward fact, American Family has filed its motion for summary judgment, which motion we conclude has merit thereby warranting dismissal of Plaintiff's claims.

The parties agree that Indiana law applies in interpreting this insurance policy and that, under Indiana law, the meaning of a contract is ordinarily a question of law suitable for resolution on summary judgment. *E.g., Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997). We enforce an unambiguous insurance contract according to its plain meaning, even if that decision limits the coverage available. *Schenkel & Schultz, Inc. v. Homestead Ins. Co.*, 119 F.3d 548, 550 (7th Cir.1997). We will find that an ambiguity exists only if the policy's language is susceptible to more than one interpretation and reasonably intelligent persons could honestly differ about its meaning. *See General Accident Ins. Co. of America v. Gonzales*, 86 F.3d 673, 675 (7th Cir.1996),

citing *Fidelity and Guaranty Ins. Underwriters, Inc. v. Everett I. Brown Co., L.P.*, 25 F.3d 484, 486 (7th Cir.1994).

Williams makes two claims: first, that American Family took an unfair length of time to pay him his actual cash value entitlement and secondly, that no policy language requires that he, as opposed to some other entity, purchase and own the replacement property. He contends that, in order for American Family to deny payment, the policy provision allowing additional increased coverage for replacement values would have to specify that such coverage applies when the property is repaired or replaced "only and explicitly by the named insured and titled only and explicitly in the name of the named insured" and no such language appears in this policy.

It is true that the policy does not include a provision such as Williams describes, but the policy does make it quite clear that American Family will adjust the loss only with the named insured and will pay only the named insured. The policy also unequivocally restricts American Family's relationship and obligations to its insured or any other entity legally entitled to recover under the terms of the policy. Nowhere in the policy is Oracle Prime named or referenced as an insured. Further, no evidence has been adduced to establish that Oracle Prime is somehow legally entitled to recover proceeds from the policy coverages. Williams, himself, implicitly acknowledged in his communications with American Family his understanding that the insurance contract agreement was solely between American Family and him, when he refused to accept an actual cash value

-11-

settlement check that included the federal government as a co-payee.  Williams was

entitled to collect replacement value coverage if he rebuilt or replaced the lost property,

not if a separate corporation purchased a home in which Williams intended to and did

reside.

Williams's attempt to interpret the "Replacement Coverage" provisions so as not

to require the named insured to purchase or own the replacement property in order to

qualify for these benefits exceeds the boundaries of acceptable adversarial creativity.

Even in the absence of a specific provision requiring that the insured personally must

purchase or own the replacement property, no  reasonable interpretation of the applicable

provisions of the policy supports a construction that would allow an owner/insured simply

to turn in a receipt to the insurer reflecting the purchase price of property paid by

someone other than himself expecting to collect on that receipt under the  replacement

coverage provisions of this particular policy.  That is what Williams is attempting to

accomplish here.

Williams contends that his situation is unique because he is a member of the

limited liability corporation that is Oracle Prime, which entity authorized the purchase of

the Market Street house for him to live in it while insulating himself from possible future

personal or professional liability claims.  He maintains that the proceeds from American

Family's actual cash value payments were used to fund the down payment on the Market

Street house, while conceding that he bears no liability for payment of the remainder of the purchase price.

We will not speculate as to the possible reasons behind Williams's various financial decisions and transactions or his creation of and participation in Oracle Prime. Whatever his reasons, he can not expect to be permitted to unilaterally alter the terms of his other legal relationships to suit his shifting strategies and convenience. *See Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 477-78 (2006)(sole shareholder of corporation, who appropriately received protection against personal liability in corporate bankruptcy, could not rely on corporate relationship with third party to personally enforce certain obligations third party owed corporation). Clearly, corporate identity is not synonymous or interchangeable with personal capacity, thereby permitting an individual the unfettered discretion to choose which form he prefers at any given moment when others' otherwise protectable legal interests are implicated in or effected by the change.

Plaintiff's claim that American Family took too long to pay out on the actual cash value coverage is not pinned to any entitlement for more timely action under the contract. There simply is no obligation imposed on American Family to have made this payment within any particular time period. Williams's contention that the delay was unreasonable is in any event not supported by the facts. He received one very large payment under the policy in October and another in December, which left him with more than three months to complete the replacement benefits prerequisites. The initial attempt by American

-13-

Family to include the government as an additional payee was entirely understandable, though ultimately determined by the company itself to be in error, but the error was corrected in a timely fashion after Williams raised his objection.  Furthermore, Plaintiff was not foreclosed from taking any and all steps entitling him to receive the replacement value prior to his receipt of the entire cash value benefits for his dwelling and its contents. In fact, the explanation Williams provides in his  February 2006 letter to Sherry Applegate suggests that he had, indeed, already discussed the purchase of his temporary residence with its owner prior to receiving the final actual cash value payout.

Finally, Williams's response brief omits any attempt to explain or defend his failure to timely submit the additional corroborative data connecting the particular lost contents items with the envelope full of receipts he had provided to American Family in March of 2006.  His brief addresses only the issues relating to the residence, not the contents.  In the end, Williams's breach of contract claim does not succeed because his untimely payment theory is not tied to any provision of the contract nor does it flow from any presumption of reasonableness.

_Conclusion_

Plaintiff did not, as required by the insurance contract to which he was a party, replace or rebuild his insured residence within one year after the loss and thus was not entitled to receive any replacement value coverage payments.  He has received the actual

cash value of both the dwelling and the lost contents, but American Family owe's him

nothing further under the replacement value coverage of the policy.  American Family

has not breached its contract with Plaintiff.  Defendant's Motion for Summary Judgment

(Doc. #30) is GRANTED.  A separate judgment in favor of American Family shall issue.

    IT IS SO ORDERED


Date:  09/15/2008

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Copies to:

William L. O'Connor
DANN PECAR NEWMAN & KLEIMAN
woconnor@dannpecar.com

Robert Scott O'Dell
O'DELL & ASSOCIATES PC
rodell@odell-lawfirm.com

Mark Richard Waterfill
DANN PECAR NEWMAN & KLEIMAN
mwaterfill@dannpecar.com

-15-